UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
COSMIN F. HARRIS, JR.,

                      Plaintiff,

                v.

J CAP, JOHN DOE 1 (DR. AQUINO), Senior Doctor, VICTOR DELGADO, Director of Programs, NACY BRINN, C.F.O., JANE DOE 1, Doctor/Physician Assistant/LPN, JANE DOE 2 (MS. BARNES), Director, JOHN DOE (DR #3), (African Doctor), JOHN DOE, Senior Con., and JANE DOE, Medical Director,

                      Defendants.

NOT FOR PUBLICATION

**MEMORANDUM & ORDER**
18-CV-7352 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Cosmin F. Harris, Jr., proceeding *pro se*, commenced the above-captioned action against Defendants in the Southern District of New York. (Compl., Docket Entry No. 2.) On December 18, 2018, the action was transferred to this Court. (Transfer Order, Docket Entry No. 4.) Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for, *inter alia*, deliberate indifference, neglect, and "[m]edi[c]al [d]ecisions [f]rom non[-]medi[c]al staff." (Compl. 2.)[1] The Court grants Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Req. to Proceed IFP, Docket Entry No. 1; Mot. for IFP dated Dec. 11, 2018.) For the reasons discussed below, the Court dismisses the Complaint and grants Plaintiff thirty (30) days from the date of this Memorandum and Order to file an amended complaint.

---

    [1] Because the Complaint is not consecutively paginated, the Court refers to the page numbers assigned by the Electronic Case Filing ("ECF") system.

**I. Background**

The Court assumes the truth of the factual allegations in the Complaint for purposes of this Memorandum and Order.

The Complaint consists of handwritten entries in a form complaint. (*See generally* Compl.)  In the space provided to describe the "Legal Basis for Claim," Plaintiff alleges violations of his constitutional rights and states: "Deliberate Indifference, Neglect, Medi[c]al Decisions From non[-]medi[c]al staff Inter Alia." (*Id.* at 2.)  Although the handwriting is somewhat challenging to decipher, Plaintiff appears to complain about medical issues from both 2013 and 2018. (*See id.* at 5–7.)  Plaintiff identifies the 2013 injuries to include a heart attack, knee injuries, and a broken jaw, and contends that they are "untreated . . . since 2013." (*Id.* at 5.)  Plaintiff does not indicate where or how those injuries occurred and does not appear to be raising any claims directly related to the 2013 injuries. (*See generally* Compl.)

Plaintiff alleges that the 2018 incident began on March 19, 2018, while he was in a residential treatment facility operated by the Queens Village Committee for Mental Health for J-CAP ("J-CAP"). (*See id.* at 5.)  Plaintiff was denied access to his primary doctors for treatment of his knee and heart, pain management, physical therapy, and trauma therapy. (*Id.*)  He received "pain management" in April and May of 2018, and was referred to an "H.I.V. [doctor]," even though he is HIV-negative, and to a "[l]ung [doctor]," although he has no respiratory problems. (*Id.*)  Plaintiff was denied "medical passes" and passes for "outside appointments" with his "medical or legal team." (*Id.*)  At one point, he was transported to an outside facility by ambulance, and made an appointment from the emergency room. (*Id.*)  Plaintiff alleges that "[p]arole was cleared, [b]ut medical was denied." (*Id.*)  At the same

time, other clients were permitted to leave the facility to attend the Puerto Rican Day Parade and for medical appointments. (*Id.* at 5–6.)

Plaintiff asserts that he was forced to see Defendant Dr. Aquino, who Plaintiff states had been convicted of bribing a senator, and that Dr. Aquino, along with an individual by the name of "Ms. Gonzalez," referred Plaintiff to their own associates and friends, rather than Plaintiff's primary doctors. (*Id.* at 6.) Plaintiff alleges that these acts amount to medical fraud and conspiracy, and suggests that these acts exposed him to liability for associating with a felon or participating in medical fraud. (*Id.*)

As a result of the restrictions placed on his medical care, Plaintiff states that he received "no treatment for old or new injuries," and suffered additional physical injuries and pain. (*Id.* at 7.) He was "[c]aused serious injury," including "new injur[ies] [to his] right ankle [and] lower back and trauma with added pain [and] suffering to old injuries." (*Id.*) Plaintiff alleges that he also suffered discrimination, retaliation, and threats, and that "Queens parole [was used] to cause calculated harassment and [r]etaliation to [purposely] instill fear" to prevent Plaintiff from pursuing a "civil [a]ction." (*Id.* at 6–7.)

Plaintiff attaches various documents to the Complaint, including Freedom of Information Law requests addressed to multiple New York State and City agencies, (*id.* at 11–19), filings associated with a claim dated November 13, 2014 and filed in the State of New York Court of Claims on February 5, 2015 relating to incidents that occurred in June and July of 2014 at the Riverview Correctional Facility, (*id.* at 22–29), and a letter dated January 29, 2015 from Plaintiff's mother, Barbara Wright, a certified surgical technician and nurse, complaining of his treatment "while in the system," (*id.* at 30).

Plaintiff seeks money damages and injunctive relief, including, *inter alia*, the suspension without pay of Dr. Aquino and Defendant Victor Delgado, and an "[o]rder of protection to all residents at 55 Rutgers St[reet]" in New York, New York. (*Id.* at 7.)

## II. Discussion

### a. Standard of review

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally"). Nevertheless, the Court is required to dismiss *sua sponte* an *in forma pauperis* action if the Court determines it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

### b. Section 1983 claims

To maintain a claim brought under section 1983, a plaintiff must allege that the conduct complained of (1) was "committed by a person acting under color of state law" and (2) deprived the plaintiff "of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Moreover, the plaintiff must allege the direct or personal involvement of each of the named defendants in the alleged constitutional deprivation. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

#### i. Plaintiff fails to allege that Defendants are state actors

As an initial matter, the Court cannot determine based on Plaintiff's allegations that Defendants, apparently staff members at J-CAP, are state actors. The facility is operated by a not-for-profit organization, but, in addition to voluntary commitments, accepts clients who are referred by judges as an alternative to incarceration and from the New York State Division of Parole.[2] Plaintiff has not specified why and under what authority or conditions he was a resident at J-CAP. He mentions "Queens Parole," but it is not clear if Plaintiff was detained or was voluntarily residing at the J-CAP facility as an alternative to detention. To properly assert a claim under section 1983, Plaintiff must state sufficient allegations that Defendants were acting under color of state law. *See Azkour v. Bowery Residents Comm., Inc.*, 646 F.

---

[2] *See* Admissions, Queens Village Committee for Mental Health for J-CAP, Inc., http://www. jcapprograms.com/admissions.html (last visited Apr. 16, 2020).

5

App'x 40, 41 (2d Cir. 2016) (affirming dismissal of a section 1983 claim because the defendant was a private entity, not a state actor); *Grogan v. Blooming Grove Volunteer Ambulance Corps.*, 768 F.3d 259, 263–69 (2d Cir. 2014) (affirming dismissal of a section 1983 claim because the plaintiff failed to prove that the defendant's actions were state actions); *Harrison v. New York*, 95 F. Supp. 3d 293, 306 (E.D.N.Y. 2015) (dismissing *pro se* plaintiff's section 1983 claims for failure to plead state action element).

### ii. Plaintiff does not allege a constitutional violation

Even assuming that the J-CAP employees are state actors, it is unclear that Plaintiff's constitutional rights were violated.

The Constitution "does [not] permit inhumane [prisons]," and "prison officials must ensure that inmates receive adequate food, clothing shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Inadequate medical care in prison or pretrial detention may give rise to a constitutional deprivation where a plaintiff alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (establishing the standard applicable to treatment of convicted prisoners under the Eighth Amendment); *see Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (applying the same standard to individuals detained pretrial under the Fourteenth Amendment). A plaintiff must show that he was "actually deprived of adequate medical care," and that "the inadequacy in medical care is sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006). He must also show that the official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

6

To state a claim based on inadequate medical treatment, a plaintiff must sufficiently allege (1) that he had an objectively "serious medical condition," and (2) that this condition was met with subjective "deliberate indifference" on the part of prison officials. *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000). In order to satisfy the objective element, a plaintiff must establish a serious medical condition by showing "that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin*, 467 F.3d at 280 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Plaintiff alleges that J-CAP employees would not allow him to leave the facility to be seen by outside medical providers and that he received "no treatment for old and new injuries." (*See* Compl. 5–7.) But Plaintiff also alleges that he was seen by multiple medical providers within the facility and, on at least one occasion, transported to outside providers. (*Id.* at 5.) Plaintiff also claims that he suffered new injuries, (*id.* at 7), but does not identify how he was injured or describe how the restrictions on outside medical appointments caused these new injuries, (*see generally* Compl.). As currently presented, the Complaint does not adequately allege that Plaintiff faced a substantial risk of serious harm or that he was actually deprived of adequate medical care.

Plaintiff provides even less information about the 2013 injuries, (*see id.* at 5), and therefore fails to state a claim as to any of those injuries. Moreover, any claims arising from that time period would likely be barred by the three-year statute of limitations governing section 1983 claims in New York State. *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) ("Section 1983 actions in New York are subject to a three-year statute of limitations," which "run[s] from the time a 'plaintiff knows or has reason to know of the injury' giving rise to the claim." (quoting *Cornwall v. Robinson*, 23 F.3d 694, 703 (2d. Cir. 1994))).

To the extent Plaintiff alleges negligence or medical malpractice, these claims arise under state law rather than federal law. *See, e.g.*, *Obunugafor v. Borchert*, No. 01-CV-3125, 2001 WL 1255929, at *2 (S.D.N.Y. Oct. 19, 2001) (holding that a plaintiff's claims for medical neglect and failure to diagnose amounted to a claim of negligence or malpractice under state law and did not raise a federal question).

For the foregoing reasons, the Court dismisses Plaintiff's complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, the Court grants leave to file an amended complaint within thirty (30) days of the date of this Memorandum and Order in order to clarify his claims under the Constitution's protections against deliberate indifference to serious medical needs of detained or incarcerated individuals. In order to proceed, Plaintiff must identify his status at the J-CAP facility and the role of the named individual Defendants in his medical care. Moreover, Plaintiff must describe his medical needs and the treatment he was provided, or not provided, in order to show that the officials disregarded a substantial risk of serious harm and failed to take reasonable measures to abate it.

### III. Conclusion

For the reasons set forth above, the Court dismisses the Complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court grants Plaintiff thirty (30) days from the date of this Memorandum and Order to file an amended complaint. The amended complaint must be captioned "Amended Complaint" and bear the same docket number as this Memorandum and Order. If Plaintiff fails to file an amended complaint within thirty (30) days, the Court shall dismiss the action. No summonses shall issue at this time, and all further proceedings shall be stayed for thirty (30) days.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to mail a copy of this Memorandum and Order to Cosmin F. Harris, Jr. at 25 Avenue D, New York, New York 10007.

Dated: April 20, 2020
      Brooklyn, New York

                                    SO ORDERED:

                                            s/ MKB
                                      MARGO K. BRODIE
                                      United States District Judge